UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMY R., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C20-5971-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff appeals denial of her applications for Supplemental Security Income and Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in assessing her testimony, two lay witness statements, and four medical opinions; in finding her mental impairments did not meet or equal a listed impairment; and in assessing her ability to work. (Dkt. # 22.) On reply, Plaintiff additionally challenges the Commissioner's decision on constitutional grounds. (Dkt. # 24.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

ORDER - 1

## II. BACKGROUND

Plaintiff was born in 1974, has a limited education, and has worked as an assignment clerk, customer service supervisor, bus driver, nursery school attendant, and driver. AR at 28-29. Plaintiff was last gainfully employed in 2014. *Id.* at 1339-40.

On November 29, 2017, Plaintiff applied for benefits, alleging disability as of May 1, 2014. AR at 15. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. After the ALJ conducted a hearing on October 22, 2019, the ALJ issued a decision finding Plaintiff not disabled since July 12, 2016, the day after a prior unfavorable decision became administratively final. *Id.* at 15-31, 1326-76.

Utilizing the five-step disability evaluation process,[1] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since July 12, 2016.

Step two: Plaintiff has the following severe impairments: cervical spine degenerative disc disease ("DDD"), status post-fusion surgery; lumbar spine DDD; ankylosing spondylitis; bilateral sacroiliitis; bilateral knee degenerative joint disease; fibromyalgia; bilateral carpal tunnel syndrome; chronic obstructive pulmonary disease; asthma; obesity; generalized anxiety disorder; and major depressive disorder.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[2]

Residual Functional Capacity: Plaintiff can perform simple light-exertion work, standing and/or walking two hours per day, 15 minutes at a time, and sitting six hours, one hour at a time. She can frequently handle and finger. She can have occasional, superficial interaction with coworkers.

Step four: Plaintiff cannot perform past relevant work.

Step five: As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR at 15-31.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-3. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 6.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV.     DISCUSSION

**A.     The ALJ Did Not Err by Discounting Plaintiff's Testimony**

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony as to symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 654, 678 (9th Cir. 2017).

The ALJ discounted Plaintiff's testimony based on statements and activities that contradicted her testimony, as well as a lack of supporting medical evidence. AR at 27-28. Lack of supporting medical evidence, alone, would not be sufficient reason alone to discount Plaintiff's testimony. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citing 20 C.F.R. § 404.1529(c)(2)). However, conflict with her own statements and activities was a clear and convincing reason to discount Plaintiff's testimony.

At the October 2019 hearing, Plaintiff testified her "life consists of laying on the couch and watching T.V. and sleeping on and off throughout the day." AR at 1344. However, in July 2016, Plaintiff reported she "[w]alks briskly at least 30 min[utes] each day" and goes to the gym three times a week, spending 30 minutes on a treadmill, then 30 minutes biking, then 15 minutes on a rowing machine, and then 10-15 minutes on an elliptical machine. *Id.* at 379. In September 2016, Plaintiff reported she "[e]njoys gardening [and] walking. Goes to gym on weekends[.]" *Id.* at 364. Plaintiff argues her condition "worsened significantly" after 2016. (Dkt. # 22 at 12.)

1 However, the treatment notes the ALJ cited were from within the relevant period about which
2 Plaintiff testified. Moreover, even in February 2019, Plaintiff reported to her therapist that she
3 "transports, cleans, cooks, and does laundry, for her ex." AR at 1100. These statements
4 contradicted Plaintiff's claims that she could do little more than lie on a couch all day.

5 At the hearing, Plaintiff that stated her report to the therapist was not true. AR at 1346.
6 Plaintiff's inconsistent statements were themselves a valid reason to discount her testimony. *See*
7 *Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) ("Factors that an ALJ may consider in weighing
8 a claimant's credibility include … inconsistencies in testimony or between testimony and
9 conduct[.]").

10 The ALJ cited other inconsistent statements as well. For example, Plaintiff brought her
11 grandson to a therapy session and told her therapist she "is watching him five days a week, and
12 feels good that her daughter trusts her to watch the baby over night." AR at 687. At the hearing,
13 however, Plaintiff contradicted herself, stating she "do[es]n't watch him alone." *Id.* at 1346. The
14 inconsistency of Plaintiff's statements was a clear and convincing reason to discount her
15 testimony.

16 Plaintiff argues "the ALJ did not state any convincing reason for rejecting any of
17 [Plaintiff's] testimony about her fibromyalgia-related limitations[.]" (Dkt. # 24 at 8.) Plaintiff
18 testified about her limitations, without regard to which impairment caused them. The ALJ
19 permissibly discounted her testimony based on conflict with her activities and inconsistent
20 statements. Plaintiff does not identify any fibromyalgia-related testimony that the ALJ
21 improperly rejected or failed to address.

22 The Court concludes the ALJ did not err by discounting Plaintiff's testimony.

23

**B.     The ALJ Did Not Harmfully Err in Assessing Lay Witness Statements**

An ALJ may discount lay witness testimony by giving a germane reason. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017).

Plaintiff's ex-husband filled out a Function Report, stating Plaintiff had "a really hard time walking and sitting for long periods of time" and was "unable to stand more than 3-5 minutes." AR at 258. He reported she can "lift no more than 10 [pounds]." *Id.* at 263. The ALJ "carefully considered" this statement put found it "unpersuasive." *Id.* at 28. The only reason the ALJ gave was that Plaintiff's ex-husband was "not a medical source," which the Commissioner concedes was erroneous. *Id.*; Dkt. # 23 at 17.

The Commissioner contends the error is harmless because the ALJ's reasons for discounting Plaintiff's testimony applied to her ex-husband's statement.[3] The Court agrees. An ALJ's failure to discuss a lay witness's testimony is harmless error where the lay witness "did not describe any limitations beyond those [the claimant] herself described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012); *see also Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 694 (9th Cir. 2009) (if an ALJ gave clear and convincing reasons for rejecting the claimant's testimony, those reasons are germane to similar testimony by a lay witness). Plaintiff's ex-husband's statements were contradicted by Plaintiff's activities that she reported to her therapist and other treatment providers.

---

[3] Plaintiff contends this is an "improper post hoc rationale" on which the Court cannot rely. (Dkt. # 24 at 8.) Plaintiff is incorrect. A *post hoc* rationale offers reasons that the ALJ did not articulate in order to argue the ALJ did not err, while a harmless error analysis concedes the ALJ erred but offers reasons why the error did not affect the ALJ's ultimate decision. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995) (Court reviews the ALJ's decision "based on the reasoning and findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."); *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (error harmless if "inconsequential to the ultimate disability determination").

ORDER - 6

Plaintiff contends the ALJ erred by failing to discuss the observations of a Social Security facilitator who interviewed Plaintiff by phone. The facilitator wrote Plaintiff "appeared to be out of breath" and "state[d] she is in pain," and checked a box stating Plaintiff was in "[e]motional [d]istress/crying[.]" AR at 266-67. There is no dispute Plaintiff has severe mental and physical impairments. However, Plaintiff fails to offer any reason why the facilitator's observations would require greater limitations than the ALJ imposed in the RFC. An ALJ "need not discuss *all* evidence presented to her. Rather, she must explain why 'significant probative evidence has been rejected.'" *Vincent v. Heckler*, 739 F.2d 1393, 1394–95 (9th Cir. 1984) (quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981)). Plaintiff fails to establish that the facilitator's observations were significant probative evidence.

The Court concludes the ALJ did not harmfully err in assessing the lay witness evidence.

**C.    The ALJ Did Not Harmfully Err in Assessing Medical Opinion Evidence**

Although the parties disagree on the standard of review, neither demonstrates that the difference between the two standards would change the outcome here. Because Plaintiff filed her claim after March 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. The ALJ must articulate and explain the persuasiveness of an opinion or prior finding based on "supportability" and "consistency," the two most important factors in the evaluation. 20 C.F.R. §§ 404.1520c(a), (b); 416.920c(a), (b). The "more relevant the objective medical evidence and supporting explanations presented" and the "more consistent" with evidence from other sources, the more persuasive a medical opinion or prior finding. *Id*. at (c)(1)-(2). At the least, this appears to necessitate that an ALJ specifically account for the legitimate factors of supportability and consistency in addressing the persuasiveness of a medical opinion. The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial

ORDER - 7

evidence. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive").

> 1. The ALJ Did Not Err by Discounting the Opinions of Kimberly Wheeler, Ph.D.

Dr. Wheeler examined Plaintiff in November 2017 and opined, based on diagnoses of generalized anxiety and major depressive disorder, that she had marked limitations in maintaining punctual attendance, adapting to changes, communicating and performing, and completing a normal workday and week. AR at 335.

The ALJ found Dr. Wheeler's opinions "unpersuasive" as inconsistent with her own largely normal findings and undermined by the unreliability of Plaintiff's self-reports. AR at 26. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

Plaintiff argues Dr. Wheeler based her opinions on "clinical observations" rather than Plaintiff's self-reports. (Dkt. # 22 at 4.) Mental status examination results were almost entirely normal: Dr. Wheeler documented normal appearance, speech, attitude and behavior, affect, thought process and content, orientation, perception, immediate memory, fund of knowledge, abstract thought, and insight and judgment. AR at 336-37. The only abnormal findings were dysphoric and anxious mood, somewhat impaired remote memory, concentration deficits, and being "avoidant" in life (based on Plaintiff's self-reports). *Id.* In the clinical interview, in contrast, Dr. Wheeler documented Plaintiff's self-reports of problems in psychosocial history, medical/mental health history, educational/work history, and activities of daily living. *Id.* at 333-34. Asked to describe "all mental health symptoms that affect [Plaintiff's] ability to work,"

ORDER - 8

every symptom Dr. Wheeler listed was supported almost entirely by Plaintiff's self-reports. *Id.* at 334. For example, the symptom "anxiety" was supported by quoting Plaintiff and relating her self-reports. *Id.* (*e.g.*, "I get fidgety."). Dr. Wheeler's only clinical observation was that Plaintiff was "[s]harply avoidant of eye contact." *Id.* The symptom of "depression" was supported entirely by Plaintiff's statements, such as: "I can break down crying anywhere." *Id.* On this record, the ALJ reasonably found Dr. Wheeler's opinions relied heavily on Plaintiff's self-reports. Because the ALJ permissibly discounted Plaintiff's self-reports, this was a valid reason to discount Dr. Wheeler's opinions.

        2.      *The ALJ Did Not Harmfully Err in Assessing the Opinions of Derek J. Leinenbach, M.D.*

Dr. Leinenbach reviewed Dr. Wheeler's report and concurred with the mental limitations she opined. AR at 721, 723. The ALJ discounted Dr. Leinenbach's opinions because they were based on Plaintiff's unreliable self-reports to Dr. Wheeler. *Id.* at 26. Reliance on Plaintiff's properly discounted self-reports was a valid reason to discount Dr. Leinenbach's opinions of mental limitations.

Dr. Leinenbach also opined Plaintiff was limited to sedentary work. AR at 723. The ALJ failed to address this portion of Dr. Leinenbach's report. The Commissioner contends the error is harmless because the jobs the ALJ relied on at step five included three sedentary occupations that together provided over 49,000 jobs in the national economy. *See id.* at 30. Plaintiff contends Dr. Leinenbach limited her to less than the full range of sedentary work. However, the additional mental limitations Dr. Leinenbach opined were permissibly rejected by the ALJ. Accordingly, the ALJ did not harmfully err by failing to address Dr. Leinenbach's sedentary limitation.

\\

ORDER - 9

    3. *The ALJ Did Not Err by Discounting the Opinions of JeNais Radabaugh, Psy.D.*

  In July 2018, Dr. Radabaugh examined Plaintiff and opined her anxiety and depression would "impair her ability to attend [a job] punctually and reliably," and impaired concentration and social skills would "impact her ability to learn and to train effectively." AR at 635. The ALJ found Dr. Radabaugh's opinions "unpersuasive" based on "significant inconsistencies between the claimant's reported symptoms and her demonstrated capabilities[.]" *Id.* at 26.

  Dr. Radabaugh's opinions were based on findings that Plaintiff "appears" to have a limited ability to reason and understand, and she "reports" a long history of absenteeism. AR at 635. Dr. Radabaugh also noted Plaintiff provided "confusing and contradictory information[.]" *Id.* While Dr. Radabaugh assessed Plaintiff to the extent possible, the ALJ reasonably found that her opinions were heavily based on Plaintiff's properly discounted self-reports. This was a valid reason to discount Dr. Radabaugh's opinions. *See Ghanim*, 763 F.3d at 1162.

    4. *The ALJ Did Not Harmfully Err in Assessing the Opinions of Sushil M. Sethi, M.D.*

  Dr. Sethi examined Plaintiff in August 2018 and opined she could "sit 6 hours, stand 1 hour, and walk 1 hour" per day. AR at 641. The ALJ found Dr. Sethi's opinions "persuasive." *Id.* at 24. Plaintiff contends the ALJ erred by failing to fully incorporate Dr. Sethi's standing and walking limitations into the RFC.

  The ALJ found Plaintiff could "stand and/or walk for 2 hours" per day, "no more than 15 minutes at one time." AR at 21. The vocational expert testified that occupations he identified that were compatible with the RFC's "limited standing and walking . . . would allow someone to change their position[.]" *Id.* at 1368. In other words, the worker would be able to sit more in order to stand and walk less. The ability to make positional changes at will would permit

ORDER - 10

Plaintiff to avoid more than one hour of standing or more than one hour of walking. The vocational expert testified that allowing for positional changes reduced job numbers for some occupations by as much as 50 percent. *Id*. Even with this limitation, the vocational expert testified a person with Plaintiff's RFC could perform jobs existing in significant numbers in the national economy. *Id.* at 1368-69.

Based on the vocational expert's testimony, the Court concludes the ALJ did not harmfully err by failing to incorporate Dr. Sethi's exact wording into the RFC. *Cf. Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (ALJ is permitted to translate medical opinions into an RFC formulation, "where the assessment is consistent with restrictions identified in the medical testimony.").

    5. *The ALJ Did Not Err by Accepting the State Agency Doctors' Opinions*

Plaintiff contends the ALJ erred by accepting the opinions of Dr. Sethi and the non-examining State agency doctors to the extent they differed from her treating physicians' "findings and opinions." (Dkt. # 22 at 12.) However, Plaintiff identifies no conflicting treating physicians' opinions. Plaintiff lists a selection of diagnoses and clinical findings but fails to show how any of them contradict Dr. Sethi's or the State agency doctors' opinions regarding her functional limitations. Plaintiff fails to show the ALJ erred in accepting these opinions.

  **D.** **The ALJ Did Not Harmfully Err in Considering Listings 12.04 and 12.06**

Plaintiff contends the ALJ erred by finding her mental impairments did not meet or equal listing 12.04 or 12.06. Plaintiff lists several clinical observations and her own self-reports but fails to offer any explanation for how these show the ALJ erred. Plaintiff simply states, in a conclusory manner, that the "evidence undermines the ALJ's step-three finding[.]" (Dkt. # 22 at 8.) It is not enough to present an argument in the skimpiest way and leave the Court to do

ORDER - 11

counsel's work by framing the argument and putting flesh on its bones through a discussion of the applicable law and facts. Without more, Plaintiff's conclusory assertion is insufficient to establish harmful error. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929-30 (9th Cir. 2003) (court "will not consider any claims that were not actually argued in appellant's opening brief").

### E.      Argument First Raised in Reply Brief is Waived

For the first time in her reply brief, Plaintiff argues "the Supreme Court's decision in *Seila Law*… requires that [Plaintiff's] claims should be remanded for a new hearing." (Dkt. # 24 at 10.) "[A]rguments not raised by a party in an opening brief are waived." *Zango, Inc. v. Kaspersky Lab, Inc.*, 568 F.3d 1169, 1177 n.8 (9th Cir. 2009). Plaintiff fails to identify any exception to the waiver rule that would apply here. Accordingly, the Court declines to address Plaintiff's argument.

## V.      CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED, and this case is DISMISSED with prejudice.

Dated this 4th day of October, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge